UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| 4310, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-01505-SEB-MPB |
| | ) | |
| GES MEGAONE, LLC, | ) | |
| WGL ENERGY SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants Ges MegaOne, LLC's ("GES") and

WGL Energy Systems, LLC's ("WGL") Motion to Dismiss [Docket No. 13], filed on

July 22, 2016 pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons

detailed below, we <u>DENY</u> Defendants' motion with regard to Count I of Plaintiff's

Complaint and <u>GRANT</u> Defendants' motion with regard to Count II.

## Factual Background

Plaintiff 4310, LLC and Defendant GES entered into a Rooftop Solar Lease

Agreement ("Lease Agreement"), drafted by GES, on September 25, 2013. *See* Compl.

¶¶ 5-6. In Section 11.03 of the Lease Agreement, a limitation was placed on GES's

ability to assign the Lease Agreement or its rights without receiving prior consent from

Plaintiff or providing Plaintiff with concurrent written notice. *Id.* ¶ 8. GES was further

required to provide Plaintiff with sufficient evidence that any incoming assignee had (1)

comparable experience to GES in operating and maintaining a photovoltaic solar system

and (2) the financial capability to maintain this system and perform the Agreement's obligations. *Id.* ¶ 9.

On June 12, 2015, Defendant WGL purchased all of the membership interests in GES, becoming the LLC's new owner, but neither GES nor WGL received the prior consent of Plaintiff for the sale, delivered concurrent notice of the sale to Plaintiff, or provided Plaintiff evidence of WGL's experience and financial capabilities. *Id.* ¶¶ 10-12. Plaintiff sent a notice of breach to GES on October 23, 2015, when it became aware of the sale. *Id.* ¶ 13. In response, WGL sent a notice to Plaintiff concerning its purchase of GES on October 28, 2015, and GES sent a notice to Plaintiff on November 2, 2015. *Id.* ¶ 14. Pursuant to sections 7.01(a)(iv)[1] and (b)[2] of the Lease Agreement, Plaintiff sent a Notice of Lease Termination to GES and WGL on November 10, 2015, asserting that the October and November 2015 notices were not provided concurrently to the sale and that it had not received information concerning WGL's experiential or financial information.[3] *Id.* ¶¶ 18-19. Under section 2.03 of the Lease Agreement, in the event of a termination, the current lessee is required to remove all of its tangible property from the leased premises within ninety days, *see id.* ¶ 20; however, WGL allegedly refuses to acknowledge the termination and, to date, has not removed its tangible property or vacated the premises. *Id.* ¶ 22.

---

[1] Section 7.01(a)(iv) states that failure to comply with all the provisions of the Lease Agreement is an event of default. *See* Compl. ¶ 16.

[2] Section 7.01(b) states that if a Lessee default has occurred and is continuing, Lessor may terminate the Lease Agreement immediately. *See* Compl. ¶ 17.

[3] WGL later sent Plaintiff an email on March 4, 2016, which included the Form Q financial details of its parent company. *See* Compl. ¶ 21.

On May 6, 2016, Plaintiff commenced this lawsuit against Defendants in the Marion Superior Court alleging a breach of contract and seeking both compensatory and declaratory relief. *See* Dkt. 1-1. Defendants removed the action to this court on the basis of diversity jurisdiction on June 17, 2016, and filed the instant motion to dismiss on July 22, 2016. *See* Dkts. 1, 13. The motion became fully briefed on August 26, 2016, and is now ripe for decision by this Court.

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests," and its [f]actual allegations must … raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Discussion

Defendants seek dismissal of Plaintiff's claims for damages (Count I) and declaratory relief (Count II), asserting as to Count I that there has been no breach and therefore Plaintiff has suffered no damages, and as to Count II, that a declaratory

3

judgment would not alter the legal relationship between Defendants and Plaintiff. *See* Def.'s Mem. at 6, 9-10. We address each argument below.

## I.      Count I: Breach of Contract

Defendants' 12(b)(6) challenge to Count I of Plaintiff's Complaint requires us to determine whether Plaintiff has alleged facts sufficient to state a claim for breach of contract.

The essential elements of a breach of contract claim are that: "(1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007) (citing *Breeding v. Kye's, Inc.*, 831 N.E.2d 188, 191 (Ind. Ct. App. 2005)). There is no dispute here that a contract existed; rather, Defendants seek dismissal of Count I on the grounds that Plaintiff failed to allege facts, which taken as true, could establish that Defendants breached the contract or that Plaintiff has suffered any damages as a result of that alleged breach. *See* Def.'s Mem. at 8.

With regard to the former, "[a] party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake." *West American Ins. Co. v. Cates*, 865 N.E.2d 1016, 1021 (Ind. Ct. App. 2007) (citing *Breeding*, 831 N.E. 2d at 191).

Here, Plaintiff has alleged that Defendant GES failed to uphold its obligation to either obtain written consent before or provide notice and information concurrent with its assignment of the Lease Agreement to WGL. *See* Compl. at ¶ ¶ 8-9. In support of its position, Plaintiff attached to its Complaint the parties' Lease Agreement, which includes

the following provision governing the sale, transfer, or assignment of the Lease

Agreement:

> Lessee shall not sell, transfer or assign … this Agreement or any right, interest or obligation therein, without the prior written consent of Lessor …; provided, however, that, without the prior consent of (but with concurrent written notice to) Lessor, Lessee may … make an Assignment through merger, consolidation or sale of all or substantially all of Lessee's stock or assets; … provided further that in all circumstances, Lessor has been provided sufficient evidence, as determined by Lessor, that any proposed assignee has … comparable experience as Lessee in operating and maintaining photovoltaic solar systems comparable to the System; and has the financial capability to maintain the System and perform the obligations of Lessee hereunder.

*See* Dkt. 1-1, Ex. A § 11.03.

According to Plaintiff, Defendants breached this provision of the Lease

Agreement when, on June 12, 2015, GES sold all of its membership interests to WGL

without having first obtained Plaintiff's written consent or, alternatively, provided

concurrent notice of the sale to Plaintiff along with information about WGL's experience

and financial capabilities. *See* Compl. at ¶ ¶ 8-9.  Plaintiff alleges in its Complaint that it

was not provided notice of the sale by GES until November 2, 2015, some five months

after the transaction had occurred, *id.* at ¶ 14, and that it did not receive any information

regarding WGL's experience and financial capabilities until March 4, 2016, when it

received the WGL's parent-company Form Q financial statement—a document it

maintains is inadequate by itself to satisfy Defendants' obligation under the above-quoted

provision. *Id.* at ¶ 21.

Giving plain meaning to the terms of the contract, these allegations more than adequately state a claim for breach. The above-quoted provision clearly provides that, in the case of assignment by sale "of all or substantially all of Lessee's stock or assets," the Lessee must, at minimum, provide "concurrent written notice to[] Lessor" and must, "in all circumstances," provide "sufficient evidence" that the proposed assignee has "comparable experience as Lessee in operating and maintaining photovoltaic solar systems" as well as the requisite "financial capability to maintain the System and perform the obligations of Lessee." *See* Dkt. 1-1, Ex. A § 11.03.

Defendants do not dispute that the Lease Agreement required "concurrent notice" of the assignment by sale, nor do they dispute that GES failed to provide notice to Plaintiff until November 2, 2015. Rather, they argue that Plaintiff's claim is subject to dismissal because Plaintiff cannot establish that GES's failure to provide notice of the company's June 12, 2015 sale until November 2, 2015, or its failure to provide Plaintiff with WGL's Form Q financial statements until March 4, 2016, represented a "material breach" of the Lease Agreement. *See* Defs.' Mem. at 7.

Defendants' materiality argument is misplaced in this context. It is well established under Indiana law that the question of whether a party's breach is material is one of fact typically not appropriate for pre-trial disposition. *See Collins*, 871 N.E.2d at 375; *Frazier v. Mellowitz*, 804 N.E.2d 796, 802 (Ind. Ct. App. 2004); *Smith v. State Lottery Comm'n*, 812 N.E.2d 1066, 1073 (Ind. Ct. App. 2004). In fact, the case on which Defendants rely, *Biomet, Inc. v. Smith*, explicitly states as much a mere two lines above the list of determinative factors that Defendants include in their brief. 238 F. Supp. 2d

6

1036, 1049 (N.D. Ind. 2002) (Ruling on summary judgment, the court stated, "The question of whether a party has materially breached an agreement is a question of fact..."). Accordingly, we <u>DENY</u> Defendants' motion to dismiss with regard to the issue of materiality on grounds that it has been raised prematurely and requires further discovery and factual development by the parties.

In a similar vein, Defendants argue: "Assuming the LLC had the obligation under the Lease to provide 'concurrent notice' to Lessor of the alleged assignment to WGL…GES had 30 days to cure any breach 'after Lessor's notice of such breach.'" *See* Defs.' Mem. at 7. It appears this contention references Article VII of the Lease Agreement, which defines incidents of default.

Section 7.01(a)(iv) provides that a Lessee Default occurs when:

> Lessee fails to comply with any provision of this Agreement…, and (A) if such breach can be cured within thirty (30) days after Lessor's notice of such breach and Lessee fails to cure, or (B) Lessee fails to commence and pursue said cure within such thirty (30) day period if a longer cure period is needed.

*See* Dkt. 1-1, Ex. A § 7.01(a)(iv).

Section 7.01(b) provides:

> If a Lessee Default has occurred and is continuing, Lessor may terminate this Agreement immediately upon the expiration of the respective grace periods set forth in such provisions, and/or otherwise exercise any other remedy it may have at law or equity or under this Agreement.

*Id.* at § 7.01(b). Defendants contend that having notice of their alleged breach on October 23, 2015, and having promptly responded with a written notice of assignment on

November 2, 2015, "Lessor did not have the right to terminate the Lease on November 10, 2015." *See* Defs.' Mem. at 8.

This line of argument conjures up a myriad of questions requiring resolution, including: Was Defendants' breach of Section 11.03's concurrent-notice provision curable? If so, did Defendants adequately "cure" the breach by providing notice to Plaintiff nearly five months after the sale had occurred, but within thirty days of being notified by Plaintiff of the alleged breach? Likewise, did their provision of WGL's parent-company's Form Q on March 4, 2016, "cure" their alleged breach of the Section 11.03 requirement to provide information about any proposed assignee? If not, did their conduct constitute a "Lessee Default"? If so, was that default "continuing"? Finally, would such conduct entitle Plaintiff to terminate the Lease Agreement and evict WGL from the premises?

Each of these questions is ill-suited for resolution in ruling on a motion to dismiss. At this stage, we analyze only the sufficiency of Plaintiff's pleadings, accepting all well-pled facts as true and drawing all permissible inferences in favor of Plaintiff. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). As previously explained, Plaintiff has alleged that, by failing to provide adequate notice and information to Plaintiff concurrent with its sale, GES breached Section 11.03 of the parties' Lease Agreement; this alone states a plausible claim for breach of contract on which Plaintiff may ultimately recover. Despite Defendants' attempt to argue otherwise, Plaintiff's Complaint need not

anticipate and respond to affirmative defenses[4] in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Accordingly, we also <u>DENY</u> Defendants' motion to dismiss with regard to their argument that they "cured" the alleged breach.

In a related argument, Defendants contend that Plaintiff's breach of contract claim is subject to dismissal because Plaintiff cannot establish that it suffered damages as a result of the breach. Defendants claim that, in addition to "curing" the alleged breach through the belated provision of notice and financial records, WGL is "complying with all Lease terms, including paying rent." *See* Defs.' Mem. at 9.

This argument, similar to those already addressed, places the cart before the horse. While Defendants may succeed in limiting their total liability on Plaintiff's claims through proof that they took steps to mitigate the damages suffered by Plaintiff such as "curing" the breach and continuing to pay rent, such a showing requires evidence beyond the pleadings. Assuming the facts are undisputed, it is an issue more appropriately addressed and resolved in a motion for summary judgment.  In addition, it is well established under Indiana law that damages suffered as the result of an unauthorized lease

---

[4] We interpret Defendants' contention that, while they may have breached the Lease Agreement by failing to provide concurrent notice to Plaintiff, they should, nevertheless, be exempted from liability for their breach because they took subsequent steps to "cure" the breach as that term is defined under section 7 of the Lease Agreement, which would be an affirmative defense to Plaintiff's breach of contract claim. *See, e.g.*, *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) ("An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters.").

assignment may extend beyond monetary losses associated with rent. *See Collins*, 871
N.E.2d at 370–71 ("Monetary damages are not the only available remedy for breach of
contract… the purpose of a covenant against assigning and subletting in a lease is 'to
reserve to the lessor the right to say who should occupy the premises.'") (citing
*Indianapolis Mfg. & Carpenters' Union v. The Cleveland, C. C., & I. Ry. Co.*, 45 Ind.
281, 288 (Ind. 1873)). We, therefore, <u>DENY</u> Defendants' motion to dismiss Count I on
this ground as well.

## II.     Count II: Declaratory Judgment

Defendants seek dismissal of Plaintiff's second count for declaratory relief
because there is no legal controversy between the two parties (because there is no breach,
according to Defendants), and declaratory relief would not alter the rights and obligations
between the parties. *See* Defs.' Mem. at 10. A court "may declare the rights and other
legal relations of any interested party … whether or not further relief is or could be
sought." U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 57. When a party requests declaratory
relief together with a substantially similar remedy, "the court may exercise its discretion
to dismiss the declaratory judgment claim." *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*,
777 F. Supp. 713 (S.D. Ind. 1992) (citing *Newton v. State Farm Fire & Casualty Co.*, 138
F.R.D. 76 (E.D. Va. 1991)).

In *Newton*, the plaintiffs alleged that an insurance company breached a contract
between the parties and brought an action for both the breach and declaratory relief. *Id.* at
717. The *Newton* court dismissed plaintiffs' request for declaratory relief, determining
that the breach of contract claim itself would resolve any disputes between the parties. *Id.*

10

Likewise, this Court in *Stop-N-Go*, in ruling on a motion to dismiss, found declaratory relief to be inappropriate when a "plaintiff may be fully compensated if it prevails on the breach of contract claim. … Determination of the breach of contract claim will sufficiently and effectively resolve the issues presented in this matter." *Id.* at 718.

In the action before us, resolution of the parties' disputes will turn on whether Defendants are determined to have breached the Lease Agreement. Because this determination will fully and effectively compensate Plaintiff, assuming it prevails on Count I, we GRANT Defendants' motion to dismiss Count II.

## Conclusion

For the reasons detailed above, Defendants' Motion to Dismiss [Docket No. 13] is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Date:  _3/31/2017_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Julia E. Dimick
ALERDING CASTOR HEWITT LLP
jdimick@alerdingcastor.com

Michael J. Alerding
ALERDING CASTOR LLP
malerding@alerdingcastor.com

11

Michael Wang
GENERAL ENERGY SOLUTIONS USA INC.
michael.wang@gesyw.com

Jennifer Jay Kalas
HINSHAW & CULBERTSON
jkalas@hinshawlaw.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

Bao M. Vu
STOEL RIVES LLP
bao.vu@stoel.com

Edward C. Duckers
STOEL RIVES LLP
ed.duckers@stoel.com